No. 37,988

I. D. Pontious, *Appellee,* v. W. J. Bath, *Appellant.*

(223 P. 2d 985)

Opinion filed November 10, 1950.

*Herman W. Smith, Jr.,* of Parsons, argued the cause, and *Elmer W. Columbia* and *John B. Markham,* both of Parsons, were with him on the briefs for the appellant.

*Jack L. Goodrich,* of Parsons, argued the cause, and *L. E. Goodrich,* of Parsons, was with him on the briefs for the appellee.

The opinion of the court was delivered by

Harvey, C. J.; Plaintiff brought this action under G. S. 1935, 47-117 for damages to his crops alleged to have been caused by defendant permitting his swine to run at large in violation of G. S. 1935, 47-112. A jury trial resulted in a judgment for plaintiff of $1,066.75. Defendant has appealed. No complaint is made of the amount of the judgment if plaintiff is entitled to recover.

The pertinent facts may be stated briefly as follows: In 1948, and for several years prior thereto, plaintiff was a tenant living upon a described eighty acre tract of land in Osage township in Labette county and engaged in the business of truck farming, raising tomatoes, sweet corn, and other crops usually raised by truck farmers. The land which could be farmed on the eighty acre tract was especially suitable for that purpose. Defendant owned or leased and operated a large acreage of land contiguous to the tract plaintiff was farming on the east, west and south. On the north of the eighty acre tract was a county road, and across the road to the north the defendant used other land. It was rough country mostly covered with brush and timber. Defendant used this land for the raising of hogs. In the area to the east, south and west of plaintiff's property he turned forty-five brood sows in the timber to raise their broods. A few years earlier he had built a hog-tight fence along the east and west sides and south end of plaintiff's property. This was 26-inch hog wire with two or more strands of barbed wire above. The tract on which plaintiff lived had some high land, where the improvements were, and the land sloped to the east, south and west. On the night of June 22, 1948, there was a heavy rainstorm in that locality which washed out the fences at places on the south and east of plaintiff's land—at one place for a distance of about 250 yards. Soon after that defendant's hogs began to get into plaintiff's fields, and on July 11 plaintiff notified defendant that his fences were down and his hogs were entering plaintiff's land and destroying his crops. Nothing was done by defendant about repairing these fences until about August 13. In the meantime the hogs had done a great deal of damage to plaintiff's crops.

The statutes relied upon by plaintiff read:

"All persons owning or having charge of any swine in this state shall keep the same from running at large, except as in this article otherwise provided." (G. S. 1935, 47-112.)

"If any swine shall be suffered to run at large in any township where the legal voters thereof have not voted to be exempt from the operations of this article, and shall trespass upon the land of any person, the owner or person having possession of such swine shall be liable for all damages the owner or occupant of such land may sustain by reason of such trespass." (G. S. 1935, 47-117.)

Our statutes (G. S. 1935, 47-113 to 47-116) authorize an election in any township to be exempt from the provisions of 47-112, and in *Scott v. Lingren*, 21 Kan. 184, in a similar action, where there had

been no effort on the part of the plaintiff to show that such election had not been held under these statutes, the court held he could not recover. On a demurrer to plaintiff's evidence defendant argued that there had been no such showing in this case. The point is not well taken. It had been shown by the township clerk's books, as far back as 1902, which was as far back as they were in possession of the township officials, that no such election had been held at any time since 1902. Residents of the township who had lived there for many years before 1902 testified they never heard of such an election. The county clerk, who testified that minutes were made in the clerk's books of the township elections, testified she had examined them and found no notation concerning a township election of any character pertaining to livestock running at large. Under this showing we think the demurrer was properly overruled on this point.

Appellant argues: "Swine that escape from an enclosure surrounded by a barrier reasonably adapted to their restraint and without knowledge or fault of their owner are not 'running at large' within the meaning of G. S. 1935 47-112 and 47-117," and for this reason the pleadings and opening statement did not establish any liability of defendant. The point is not well taken. The suit is not predicated upon the fact that the fences were washed down by the water, but upon the facts alleged in the petition and shown by the evidence, which were that after defendant knew of that fact, and knew that his hogs were running on the land of the plaintiff, he permitted them to do so for as long as a month, within which time the damage was caused.

In the court's instructions the court gave four paragraphs dealing with the general law of negligence. Before giving the instructions to the jury the court had submitted the instructions to counsel. Counsel for plaintiff objected to those instructions and stated that he did not predicate his case upon negligence but upon the statute. Counsel for defendant also objected to the instructions on negligence and also to some of the other instructions. The court considered these objections and finally concluded that under the evidence the instructions should be included. Perhaps this view was prompted by the fact that much of the evidence on defendant's behalf pertained to his efforts to round up the hogs in the pasture contiguous to plaintiff's land and transfer them to the pasture north of the highway. His witnesses testified as to how they searched for the

hogs in the brush and weeds, which were higher than their heads on horseback, to round them up and drive them over to the other pasture, and that out of the forty-five sows with their pigs which were in that pasture they had succeeded in getting thirty-five of them. Six were found sometime later, with plaintiff's help, and four of them had not been found. In this situation there is reason to say, as appellee argues, that the instructions on negligence were more helpful to the defendant than to the plaintiff. Appellant cites cases to the effect that where the parties "stipulate" that certain instructions should not be given it is error for the court to give them. But here there was no stipulation. In a charge of violating the law there is frequently evidence of negligence.

Appellant contends that certain evidence introduced by the plaintiff was improperly admitted. We have examined the rulings criticized under this head and find no substantial error.

Appellant argues that he is entitled to judgment on the answers of the jury to the special questions. This is largely a reargument of other questions argued earlier and we think the court's ruling upon that matter was proper.

The case is an unusual one, but there is nothing in the record to indicate that the parties did not have a fair trial, or that the result is improper. Apparently the jury was very careful in considering all the evidence and if anything they were quite conservative on the amount of damages. Some of the evidence on plaintiff's behalf would have justified a substantially larger sum. We find no error in the record which would justify a reversal.

The judgment of the trial court is affirmed.